On behalf of the athlete, Mr. Steve McCline, on behalf of the athlete, Mr. Steve McCline. Mr. Flaherty. Thank you, Presiding Judge, and may it please the Court, Mr. McCline. Good afternoon, my name is Frederick Flaherty, and I'm honored to be here today representing the people of the State of Illinois by and through the offices of Robert B. Berlin, State's Attorney in DuPage County. We're here today because the lower court improperly entertained a mid-trial motion that had the effect of suppressing evidence. As a result, the lower court's ruling should be reversed. Counsel, when could the court have entertained that motion? Well, the court was not in a position to entertain it until it was brought. The fault does not lie with the court necessarily as far as when it was brought. The fault lies with the defense in that it was improper to have brought that motion in the midst of the trial, in fact, after the people had rested their case. Well, how did they know about that affidavit until, you know, how did they know about the substance of the issue to bring the motion? Right. There was no surprises to what was inside that affidavit. Simply based on how the defendant was charged for driving it more than twice the legal limit on March 10th, 2009, the defense knew that people would have to produce evidence of certification of the breathalyzer instrument, and that those certifications had to have been completed before June 4th, 2009. That's the relevant date because that's when the new regulation went into effect. In any DUI case with a breath result, people have to show that certification. The only surprise the defense could have claimed would be if the state police had not complied with the regulation that was in effect at the time. There's no surprise to find that the state police complied with what they were required to do at the time that they completed the transaction of certification, and they were required at that time to follow the old regulations. Well, I don't think that's been decided yet, has it? That's right. The issue is before this Court as to which set of regulations applies today. But at the time that the transaction was completed, there's no dispute as to which regulation was in effect at that time. And so the person who actually went to the Warrenville Police Department to certify the breath instrument at that time in February and April 2009, at that time was required to follow the regulation that was in effect at that time. So what did the motion go to if he wasn't surprised? What did he allege in the motion? The defense was moving to strike. Right. Why? The defense was moving to strike it because he was arguing that the new regulation that went into effect in June should apply retroactively to a transaction that was completed in February and then again in April 2009. And the effect of that motion is to suppress evidence, and that's why the Court shouldn't have entertained the motion in the middle of a trial. What was the difference in the regulations? What did the state police test for before and after this regulation came into effect? There were two changes. The old regulation said that the certification had to make sure they have a test sample that goes into the breath instrument. And there was a margin of error, which is plus or minus 0.01. And that's roughly 10 percent. Remember, the legal limit is 0.08. So it would be between 0.07 and 0.09 to be considered compliant with the old regulation. The new regulation changed it. It said that you have to be within 10 percent. So there was a numerical change, which would put you with a reference sample of 0.08 between 0.72 and 0.88, but also that the test has to be done as adjusted for environmental factors. So there's a qualitative change as well as a quantitative difference with the new regulation. And those differences, what those do is those apply new substantive requirements for the state police to comply with. And that's exactly what makes it a case where this is retroactive impact. This is substantively changing a transaction. My question, though, is wouldn't it have been possible for the state police to have complied with the new regulations back on the old date? Possible. It would have been possible to have done so, sure. So then why wouldn't it be a surprise to the defense that they didn't? When you get the affidavit from whoever, Miller or whoever, you get the affidavit that shows that they complied with the old regs, not the new regs. Wouldn't that still be a potential surprise to the defense that they didn't comply with the new regs, where they certainly could have complied with the new regs? Right. Just because they could have complied with the old set of regulations that weren't in effect at the time doesn't mean that they, in fact, did comply with the regulations. And it is a surprise. It would only be a surprise to find the state police failed to comply with the requirements of what they were supposed to do at the time. Remember, they don't have this new regulation. They don't anticipate this coming down the pike and say, well, let's hedge our bets depending on how this might be changed. They're charged with going in there on that day and making sure that instrument is accurate, pursuant to the regulations that apply on that day. That's exactly what we would expect them to do. The motion that was brought was that they didn't comply with the new regs. Correct. And they would have never known that until they got the Miller affidavit. I disagree. Because the state police did exactly what they were required to do. That's an executor. The fact that they did what they were supposed to do doesn't mean that he necessarily has notice. I can do a lot of things for the rest of the day, and unless I call you and tell you the things that I've done, you won't know what I've done, whether I did them rightly or wrongly. I think that's correct, but I think there's a little bit different sort of situation here because this is an organization, the state police, which is charged with doing a specific task, pursuant to a specific set of rules. Why not doing a specific task in either one of two ways, either under the old or under the new? Correct. So in the realm of reasonable probability, there are two possibilities, or two probabilities. No, they're telling us there's only one probability. What I'm telling you is this. Yes, I'll agree with you that there are two possible ways that the test could have been done. Well, there are three. It could have been screwed up completely. Sure, and that would be a whole set of different areas. And that might have been a surprise, too. But at the time that the test was done, it would be shocking to think that the state police weren't at least trying to comply with the regulation that was in effect at the time that they were performing that certification. In fact, to find that they had somehow anticipated, looked into the crystal ball, seen changes are coming down the pike, and got out of the way to comply with a new regulation, that would be surprising. But to find out that what they did was exactly what at the time the regulation required them to do should come as no surprise at all. That's what they were charged with doing. That's what they sought to do. And in this case, what that shows is that they, in fact, did what they were required to do. There's no surprise at all. So the defense is exactly what you would expect. Are you suggesting that all police departments and state police did it the old way and none of them did it the new way? I don't have actual knowledge about that, and I know that's not in the record. But until the regulation went into effect, I would be surprised to find that they were seeking to abide by a new regulation that was not in effect at the time. I would think that their charge was to comply with the 2004 regulation that was in effect. And I'd be surprised to find that somebody was doing something else purposely. That would be surprising. You argued originally that the trial court improperly entertained the motion because it was untimely. Yes. Okay. Why does half your brief talk about the retroactivity issue? If we find that the court entertained an untimely motion, we would reverse on that basis. Correct. If we find that the motion was timely, then we do not have really jurisdiction to look into the other aspect of it because it's not based upon a constitutional suppression, and you agree with that, correct? I do agree. If you're looking at people being flat, that's exactly what it says. The issue is that the lower court should not have entertained it, and if the court falls flat in Goodwin, which comes from the second district, that's exactly what they should do is kick it back to the lower court for further proceedings as if the defense's motion was never even raised. But in this case, what we would ask the court to do is to actually take a look at those merits, too, because there is an issue of the uniform administration of justice in this case, which is that cases like this are continuing to pop up. There are a number of 2009 breath cases that are still out there that are active. There are a number that are inactive that are going to come through the courts as they get picked up on warrants. We'd ask the court to give some direction to the lower courts throughout the second district in order to get a clear ruling on this. This is an issue of pure law. It's an issue that has been fully briefed by both sides before the court. The court is in an excellent position to make that determination and to reach the merits of this case. But if the motion was timely made in the trial court, we don't really have the jurisdiction under 604 to answer your question. You're asking us if we find that the motion was untimely that we should better still address the issue? We would ask the court to do so in order to, and I understand that that's not falling exactly flat, but there is a line of cases that says where there's an issue of the uniform administration of justice, this is a case that is going to continue to crop up. We would ask the court to reach the merits. So you may win on the untimeliness issue and then lose on the retroactivity issue when you could have won the appeal? We could win either way, that's right. We could win either if this court decides the merits or we can win with the court saying this was untimely and therefore the court shouldn't have considered it and effectively reversing the defendant's motion to strike, which would put the breadth of evidence back in in the case. Would you agree that if the affidavit had been submitted a reasonable period of time before trial that that would have provided notice to defense such that had the motion been made at trial it would have been more obvious that it was untimely? Yes, of course, and we can see that, but I don't think the fact that the affidavit was not provided until the law books were brought at trial means defense could not have brought this motion. And remember, the issue here is, per Goodwin, the burden is on the defense to provide a satisfactory explanation as to why they could not have brought this motion before trial. And it's not an issue of actual knowledge. The state doesn't have to show the defense actually knew for sure that that's what the affidavit said. People v. Hughes, which is in the briefs which is cited there, was a case with, it was a motion to suppress statements, and defense counsel didn't realize his client was in custody until the trial was actually proceeding. And the court found that nevertheless, even though there was not actual knowledge on behalf of the defense, there was enough information that the defense attorney could have found that out. What was the name of the case? Hughes. Did I write it? Because I wrote a case about 20-some years ago where the trial court heard a motion to suppress on the basis that defense counsel was taken by surprise and ruled in favor of defendant relative to suppression of the incriminating statements. And we reversed the trial court on the basis of lack of timeliness because we determined that if, in fact, the law was as suggested by the defendant, that the defense counsel would tell his client, don't tell me anything about the case. I want to be surprised so I can then, during trial, claim that I'm surprised. And we pointed out it's not what defense counsel knows. It's what the defendant knows. Now, is that the case you're talking about?  Yes, it was in 1989. But the point there is 22 years ago. No, 22 years ago. Came down February 3rd. Yeah, we were a long time ago. I'm impressed with your ability to recall. But the point here is not dissimilar from that, which is that the information, while the defense attorney did not have actual knowledge, there was sufficient information here based simply on the charge of the defendant, be twice the legal limit that the defense could have obtained this information in. What's almost affidavit was important here is it's not surprising that the state police complied with what they were required to do under the regulations as they applied at the time. So if they requested discovery on this issue, you wouldn't have objected? That's a hypothetical. No, it's not. It's for real. Right. I mean, you don't object to discovery on misdemeanor cases? We do object to discovery on misdemeanor cases. I can tell you it would be atypical if the defense asked for an affidavit and law book pages. Typically it's something that we probably would have. But you're saying that he could have done that, but you would have objected. No, I'm saying he could have asked for them and we probably would have provided them. Informally or through the process of discovery? Either way, typically it would be brought before the judge and would be asked that way. But typically if the defense attorney asks for anything, usually what we do is we'll typically tender a copy of the police report. Maybe it comes back, there's a written statement or a video or something like that that's not included, and the defense attorney will approach us and say, hey, I see this is a breath case. Can I get a copy of the law book pages? Can I get a copy of the squad video or whatever it was that was missing? We'll do it that way. If there's a dispute, it will be brought before the trial judge if the defense isn't getting what they want to get from us through the informal channels. Moving on to the merit side of the argument, this is a case where when you look at the land graph analysis, you look at Commonwealth Edison and you run the facts of this case through the analysis that is in those cases, this is a case where the change in the regulation has retroactive impact. It imposes new substantive duties on transactions that have already been completed. As a result, this is a case of a substantive change. I see that my time is up if there are no more questions. Proceed for a little bit longer. Okay. Because there is retroactive impact in this case, it's affecting the substantive rights of the people to be able to prove their case. This is a case where the new regulation should not and does not apply retroactively. And so the merits ruling of the lower court is in fact incorrect, and we ask the court to reverse on that grounds as well as the untimeliness of the motion that was brought. Any questions? No. Thank you. Thank you. Do I have a chance for a rebuttal? Mr. Kline. Thank you, Mr. Court, Honorable Justices. Mr. Flatter, my name is Steve Kline. I represent the defendants and appellate in this matter. His name is Bradley Phillips. Your Honor, before we get started to everything we were talking about, it's our position that this was not a proper appeal made by the state based on the fact that there was not a final judgment and no suppression in this case. And the key part of that where we feel was it definitely wasn't a suppression was after the defense made the motion to strike, citing people v. Morris, which we believe is controlling in this case, the state did make a motion to reopen their proofs, and that motion was granted by Judge Ferguson. Obviously, the state felt like they needed more time. They asked the judge for a continuance to allow them to bring their evidence in so they could properly lay a foundation for that breath test. Judge Ferguson granted that continuance. The next day, when the parties resumed, the state appealed. So it's our position that this is not a suppression. And I understand that they're saying it has the effect of a suppression because it ultimately led to a breath test not being admitted. But it's not a suppression where there's a constitutional violation or after they laid everything, there is no proper foundation, as in the breath results, the machine wasn't certified properly, and it's undisputed in that fact. We believe that they could have brought the witnesses in. They could have laid the proper foundation. And that's all this objection was. In our eyes, it's no different than if the state's trying to admit a hearsay statement under a hearsay exception. There's an objection to foundation that they didn't lay the proper foundation to admit that hearsay objection. And then, okay, objection sustained. Okay, well, we're going to appeal now. So we believe that it's – I'm sorry, I saw you have a question. I don't want to interrupt. Yes. Apparently, a regulation was published, correct? The administrative regulation? Yes. And what was the lead time between the date it was published and the date it took effect? I'm sorry, the administrative code? I believe it was published in 2009 and it was effective in 2009. I don't see any difference as to when it was published and when it was effective. So when it was published, it became effective the same day? As far as I know, yes. And how could it be retroactive? I'm not quite sure I understand. Well, you know, this whole thing about retroactive, the defense really does not see it this way because we believe Morris understarted decisive controls and Morris held that the regulations there weren't being applied retroactively. We think it's a very analogous situation, just as Judge Ferguson believed in the trial court, that that should be what's controlling. It's the same administrative code regarding breath and blood testing. It's both a DUI case. It both applies to the actual chemical evidence admitted in the case. It both applies to when the rule was one way at the time that the test was taken and that the rule changes at the time of trial. So based on the holding in Morris, which is 2009 and it's a recent case, we believe that should control in this issue and that the law at the time of trial should control. And because the state was unable, and unable as I use that loosely because we don't know why they were unable to do so. They had a continuance to bring someone in. We don't know what happened. Theoretically, they could have brought someone in, testified that it did meet the 2000 amendment, 2008 amendment to the administrative rules, and be able to admit their test after they're allowed to reopen their groups. Instead, they come with an appeal. And so there's a large part of us, as I said in my brief, that believe this is a delay tactic, either A, to get a delay to allow them to bring their witness in who maybe was unavailable. I admit this is speculation, but that's all I'm doing here. Or B, ask your honors to take time out of your schedule and give them instruction how they're supposed to admit this breath test. So at this point, it's too early. It's not the proper motion to make. It's not a proper appeal at this time. And that's why the defense is asking to dismiss it. Did this regulation change make it easier for the state to prove a DUI? I don't know the answer to that question. And the reason why I don't know the answer to that question is we're asking about whether or not they have the machine tested properly. So a lot of it has to do with, well, is it easier to test for 0.01 or 10% of the sample value? Is that easier? I don't know. I don't perform these works. Is it easier or harder for them to test for environmental factors? I don't know the full answer. I don't work in that field. But I do know this, that a lot of times those environmental factors, quote, unquote, are already accounted for by the actual tank they use to test for accuracy. And environmental factors are things like barometric pressure, things like humidity. And, in fact, a lot of those things are already accounted for on the actual tank used to test the machine, which can't help lead me to believe that the reason why that was added into the administration is to be consistent and make things more right, more accurate, to say that it's actually on that tank. These are all things that the state could have brought a witness in and had the opportunity to discuss. How do we know, and this is very similar to the Morris case, and it's cited in the Morris decision, how do we know that the same testing procedure to make that thing accurate, that breathalyzer, how do we know that the way it was performed back then complied with the rules now? Maybe it was within plus or minus 10% of the value. Maybe it was adjusted for environmental factors, and it just that was the way they tested it. Similar situation in Morris. In Morris, it started off saying you cannot use a swab that contained alcohol. That was what the rule was at the time of the blood draw. At the time of the trial, it was that it must be done with proper medical technique. How do we know that not using an alcohol blood swab is the proper medical technique and that they're the same thing? And that's why we have a very analogous situation here, because it's the same situation. You didn't win that case, did you? Your Honor, we did not win that case, but I would have to – we were arguing Mr. Flavin's position in that case. You were. That's correct. We felt that the rules at the time that they were taken should govern. However, we were – my firm, Mr. Ramsell, was the lead counsel. I worked for Ramsell and Associates. We were on that side, and we lost. Who wrote that case? I'm sorry? Who wrote that case? I believe you did, Your Honor. Okay. I was on the panel. Sorry, Justice Burke. I want to ask you the same question I asked your opposing counsel. I mean, we're talking about the retroactivity and all that. Do we even get to that issue? Assume for a moment there was a suppression. I know you argued there was no suppression, but let's assume for a moment, the broad definition of suppression as we find in the pretrial, not midtrial, cases that are appealed. If there was a suppression, do we get to the issue of retroactivity? First, I want to apologize for repeating myself, but we don't believe we get to there because we believe Morris is just so right on issue here. And in Morris, they felt there was no retrograde or retroactive application. Yeah, but again, I'm talking jurisdictional. I'm looking at 604, and I'm wondering whether we even have jurisdiction to take up the argument. I say no. Okay, and give me the reason why. Well, besides the appeal issue, it's the rules that were made. I don't think Your Honor should be interpreting these rules in the sense of saying this is the right one, that's the wrong one, here's the way you should lay it. Well, the threshold issue is the timeliness of your motion in the trial court. Okay. I mean, if the motion was timely, then, again, I don't know that we get to the issue of retroactivity. Well, we believe the motion is timely. If the motion was untimely, I don't know that we get to the issue of retroactivity because it's an untimely motion that the trial court should have heard and it should go bad. We believe the motion was timely. As a trial, the chronology is important. Number one, we were not disclosed the affidavits prior to trial. Number two, there isn't even an argument in the record that we weren't even entitled to those affidavits prior to trial. The admission of those affidavits were objected to, so we didn't believe that they were improper in the first place to admit those affidavits the way they were being admitted. So we were – the defense was objecting as soon as they could. And once everything was admitted, that was the opportunity for defense counsel to stand up to the judge after the state rested and say, here's why you should strike the reverence, because they haven't laid the proper foundation. Did you object to the admission of the breath testing result when it was admitted during the state's case in chief when the breath act was on the stand? I don't recall off the top of my head, but I believe it was, yes, since we objected to everything else. I do believe it was. But I have to admit I don't know every single objection that was made. Well, the state was allowed to open a case, according to Mr. Flavin. Yes. So how – if you failed to object and they were allowed to open their case after you made your motion to strike, did they attempt to alleviate or ameliorate the problem that you raised in your motion to strike? I would say yes and no. No, because they weren't able to do it at the trial court. Yes, their attempt to alleviate that issue was to file an appeal. So that is what – how we perceived they were attempting to alleviate that issue was by filing an appeal. But they never sought to address your evidentiary objection. Well, they addressed it that they believed that they did lay the proper foundation. But after Judge Ferguson ruled, according to Morris, and he's – if you've read his opinion, you understand, he didn't necessarily agree with it. I was going to say he did not agree with Morris. He did not agree with it, but that's – sometimes, as Your Honor has known, you have to follow the law. Actually, he didn't agree with Justice McClain. He agreed with – well, no. You know, stare decisis, case presidents, he felt that he was bound by that case to do it, but I don't think that's also why he said, okay, I have to strike it because of this case. However, as a trial court, I'm going to exercise my discretion and say, State, you're allowed to reopen these proofs. I'll leave you – give you time to correct, you know, whatever problems there were. Your Honor, I have no more questions. I just have one last point, as I made in the brief and not have opportunity in front of – I would like to say that we would also ask that even if you rule in favor of us, that you still make an order dismissing the defendant's case based on the fact of this unjust delay made by the State. We really feel like our clients' due process rights were adversely affected by this delay tactic when it wasn't a final judgment and would ask to use your powers to order the trial court to dismiss the charge against them. If Your Honor has no more questions, I'm finished. Thank you. Thank you. Mr. Flanagan. Thank you. Good afternoon again. A couple of points in rebuttal first. The issue is when the defense could have raised this motion. The defense could have raised this motion any time after the change in the regulation went into effect. That's when the defense had noticed, June 4, 2009, that this was an issue that they could raise. It was a trial tactic of theirs to sit and wait until the State had rested to put this issue before the judge based on the change in the regulation. But it's one that was untimely at that time because they could have raised this previously based simply on their knowledge of the law, which everyone is presumed to know, and the nature of the charge, the fact that the certifications had to come in and had gone down that road thoroughly. Justice Hutchinson, you did ask the defense about the State responding to the evidentiary objection they made. And, yes, I will agree that the objection was marketed or captioned in terms of an evidentiary objection. But because the basis for the ruling and the substantive argument was based on a regulatory change, it's not simply an evidentiary ruling. It really is and does have the effect of suppression. And that's what Goodwin tells us. So just as far as the ‑‑ But the only proper issue before us, as I read this, is was that motion timely? Not the others, which might constitute advisory opinions or otherwise. They made the objection at the time. They didn't allege that it was illegally obtained. The evidence was illegally obtained, so they did not form it in the basis of a motion to suppress. They formed it as a motion to strike that evidence, from which you were given a chance to correct the problem. You chose not to do so in the manner that I think the trial court contemplated. Instead, you appealed. He didn't say, okay, file your certificate of impairment. He said he was giving you a continuance, well, not at your personal request probably, but at somebody's request, to figure out what to do. And that's what he let you do, to try to rehabilitate your evidence. I would agree with that. That's exactly what ‑‑ And that's all we have before us. That's true. There's a lot in there. But what the ‑‑ just because the court gave the people time, in other words, gave us 24 hours to try to find a way to cure this issue, doesn't mean that our case wasn't substantially impaired. We were not able to do so. And it was the court's improper ruling that made this a substantive impairment of the people's ability to proceed. Because it threw out the graphic result, and we don't have the evidence. You know, the affidavit shows compliance with the old regulation. We don't have evidence of compliance with the new regulation. So even though the court gives an opportunity, it doesn't change the fact that the erroneous ruling of the lower court did substantially impair our ability to proceed on that. And while timeliness is one of the issues, one of the other issues is whether the effect of defendant's motion has the effect of suppressing evidence. And because it had that effect ‑‑ Well, you are ‑‑ you probably would be substantially impaired if you didn't have the evidence to prove the case. But you couldn't appeal that. Right. So why couldn't you appeal this one? Because it's a midtrial motion suppressing evidence. And that's why the effect of the defendant's motion is relevant. And that's what Goodwin tells us, is that when a decision is based on a statutory interpretation, that falls in the area of suppression that has to be brought before trial because it's untimely to raise that in the middle of trial when the tools are available to raise it beforehand. And remember, that burden is on the defense to provide that satisfactory explanation. That's what Goodwin tells us. It's their burden. They have not provided the satisfactory explanation because there was enough information to have raised it. They could have obtained, they could have asked for those affidavits beforehand. They knew the people had to show that instrument was certified. They have to. Every breath case. Every time. And it had to be certified, and it was certified prior to the change of the regulations. So the question then becomes, what set of rules do we expect the state police to follow before any change in regulations? We expect them to follow the ones that are imposed on them at that time. There's no surprise. This could have been brought beforehand. Absolutely. Finally, with the issue of Moritz, I think that is an excellent decision from this court. And this case is, however, distinguishable from that case for a number of reasons, but most significantly because of the intent of Illinois State Police. And when you look at Moritz, what you have there is a situation where the regulations said, I see my time is up. Continue. I want to hear what it said. Thank you. In Moritz, the issue was the regulation that had been in effect previously. The old regulation said that when you're drawing blood, you have to use a swab that has absolutely no alcohol in it. And what happened was new information became available, and, in fact, there is no such swab. And so what the Illinois State Police did was they adopted an emergency regulation that went into effect for 150 days and then adopted the final version. And I think it's clear, even just from 30,000 feet looking at that, that Illinois State Police was trying to correct a regulation that was impossible to comply with. And the intent there was for it to apply retroactively. And it can apply retroactively because it does not, it did not and does not impose new substantive duties on transactions that were completed. A nurse, a medical practitioner, a doctor who's drawing blood is always required to follow standard medical techniques. So to change the regulations to require something that they were already required to do does not have retroactive impact. Conversely, in our case, there is retroactive impact because there's a change in the regulation, both quantitative, which makes it a narrower bandwidth for the range of possible responses, basically the margin of error is narrower. And there's a qualitative difference. One of the problems I'm having with your argument is the statute or the regulations may have made it more strict, but you don't have any evidence to indicate that under the one you could have complied and under the other you couldn't. So how have you established prejudice? We do have prejudice because we have, well, I will concede this, that if you look just at the math of the certifications, the math would seem to indicate that even under the new regulation, you're within that 10 percent bandwidth. But there's no evidence, there's none, absolutely zero in this case, that the certification in any way accounted for environmental factors. There's no evidence in the affidavit. There's no testimony about that. There's no evidence of that because there isn't any because that's not how they thought about these certifications prior to June 4th, 2009. And unless and until the state can show, which we cannot, there is no evidence available to show that this was compliant with the new regulation. In that, it accounted for those environmental factors. We are prejudiced. This is a breath test that was thrown out for a transaction that had already been completed on which the people relied. Okay. Thank you very much. Thank you. Is the case under advisement?